IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DOMINICA MANFRE,

    Plaintiff,

v.                                                                                                              14cv1035 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    Dominica Manfre applied for disability insurance benefits and supplemental security income on May 12, 2011, based on a learning disorder, depression, polycystic ovarian syndrome, and tendonitis causing disability beginning on January 5, 2010. (Administrative Record "AR" 163, 170, 194.) She later added gastroesophageal reflux disease, sleep apnea, inflamed lungs, enlarged liver, and possible fibromyalgia to her list of impairments. (AR 254.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on her Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Manfre's reply. (Docs. 16, 19, 21.) For the reasons explained below, I deny Manfre's motion to remand and affirm the judgment of the SSA.

**STANDARD OF REVIEW**

    When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I

must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that []he has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

### SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4),  & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See*

*Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Manfre is thirty-one years old. (AR 45.) She completed special education classes through the tenth grade and later attended cosmetology school. (AR 33, 281.) She worked as a hair stylist in 2012 for three to four months but quit after problems remembering verbal instructions, wrist pain, and back pain. (AR 33.)

I do not address everything in the record but rather target my factual discussion to those facts necessary to the disposition of this case.

On September 18, 2009, approximately three months before she alleges her disability began, Manfre saw psychologist Mark Arcuri, Ph.D., at the request of the New Mexico Division of Vocational Rehabilitation. (AR 278.) Dr. Arcuri conducted a background interview and

administered standard tests "to obtain information regarding [Manfre's] cognitive and intellectual, [sic] functioning for eligibility determination and/or program planning purposes" (*id.*), and diagnosed Manfre with Major Depression, Reading Disorder, Disorder of Written Expression, Mathematics Disorder, and Borderline Intellectual Functioning (AR 289).

The next month, on October 15, 2009, Manfre sought treatment for depression from Preston Matthews, D.O. (AR 302.) Dr. Matthews prescribed Celexa and saw Manfre for follow-up visits. (AR 299, 300, 301.) During a visit on March 29, 2010, Manfre complained of right wrist pain resulting from her ongoing training at beautician school. (AR 297.) After an examination, Dr. Matthews diagnosed Manfre with de Quervain's tenosynovitis and administered a shot for treatment. (AR 298-99.) Manfre returned to Dr. Matthews the next month, on April 12, 2010, where he splinted her right wrist and thumb. (AR 294, 296.)

On September 2, 2010, Manfre reported continued wrist pain to Santana Fontana, M.D. (AR 364.) On October 7, 2010, Manfre saw Dr. Fontana for depression. (AR 362.) He increased her dose of Celexa and initiated a "trial" of another medication, the name of which is illegible in his report. (*Id.*)

Dr. Fontana ordered Manfre to undergo an occupational assessment for her right wrist pain, and on December 6, 2010,[1] Manfre saw Erika Walters, OTRL, MPHE.[2] (AR 331.) Walters talked with Manfre about her de Quervain's tenosynovitis diagnosis, gave her a home treatment program and splint, and set up twice weekly visits for six weeks. (AR 332.) After six therapy

---

[1] The ALJ stated that the assessment occurred "on December 6, 2011," which appears to be a typographical error. (*See* AR 19.)

[2] Occupational Therapist, Registered, Licensed (OTRL); Master of Public Health Education (MPHE).

sessions, Manfre was discharged on December 30, 2010. (AR 333.) She stated that her wrist pain was a seven out of ten. (*Id.*)

On January 4, 2011, Manfre saw Dr. Fontana for thumb and wrist pain. (AR 359.) Dr. Fontana referred Manfre to New Mexico Orthopedics for treatment. (*Id.*)

Eight months later, in September 2011, Manfre underwent two examinations at the request of the New Mexico Disability Determination Services ("DDS"). First, on September 10, 2011, Manfre saw Natavan Karimova, M.D., who diagnosed her with obesity, "probably . . . a learning disability," "[p]robably . . . sleep apnea due to obesity," and "[r]ight wrist pain on palpation, probably tendonitis." (AR 406.) Nevertheless, Dr. Karimova found an RFC for medium work. (*Id.*) Second, on September 14, 2011, Manfre saw Cathy Simutis, Ph.D., who diagnosed her with "[m]ajor depressive disorder, mild." (AR 409.) The record does not contain a functional assessment from Dr. Simutis. (*See id.*)

For the remainder of 2011, 2012, and into 2013, Manfre received treatment from Genevieve Bourgeois, CNP, for issues stemming from obesity, polycystic ovarian syndrome, anxiety, and depression. (AR 411-436.) The only mention of wrist and thumb pain appears to be from a visit on November 23, 2011. (AR 412.)

Two state agency medical consultants—Lawrence Kuo, M.D., and Allen Gelinas, M.D.—and two state agency psychological consultants—Elizabeth Chiang, M.D., and Lauriann Sandrik, Psy.D.—reviewed Manfre's medical records at the request of DDS. On September 22, 2011, Dr. Kuo opined that Manfre had the RFC for "[m]edium work with additional posture and manipulative limitations." (AR 63-64.) On February 29, 2012, Dr. Gelinas noted that the "[s]um of evidence finds no improvement nor deterioration of impairments. Prior assessment is affirmed . . . ." (AR 80.) As for the psychological consultants, Dr. Chiang, on September 21, 2011,

concluded that Manfre was capable of unskilled work. (AR 70.) On March 5, 2012, Dr. Sandrik concurred. (AR 85, 100.)

## ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued his decision on April 17, 2013. (AR 24.) At step one, he determined that Manfre had not engaged in substantial gainful activity since January 5, 2010. (AR 18.) At step two, the ALJ found that Manfre had the severe impairments of polycystic ovarian syndrome and obesity. (*Id.*) At step three, the ALJ concluded that Manfre did not have an impairment or combination of impairments that met or medically equaled anything on the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.) In reaching this conclusion, the ALJ noted that Manfre's Body Mass Index fell in the Level III "extreme obesity" category and stated that her "obesity alone causes significant limitation in her ability to perform basic work." (AR 19.) However, he concluded that "the residual functional capacity . . . which limits [her] to sedentary work more than adequately accounts for this impairment." (*Id.*)

Next, the ALJ concluded that Manfre had the following non-severe impairments: "benign hypertension," "a history of De Quervain's tenosynovitis of the right wrist," "elevated blood pressure," "depression, borderline intellectual functioning, and a learning disorder." (*Id.*) In making this finding, the ALJ noted that Manfre has "no limitation" in activities of daily living; "no limitation" in social functioning; "mild limitation" in concentration, persistence, or pace; and "no episodes of decompensation which have been of extended duration." (AR 19-20.)

At phase one of step four, the ALJ determined that Manfre had the RFC for the full range of sedentary work with one exertional limitation: "at most 2 hours standing and walking in each work day on account of obesity . . . ." (AR 21.) In making this determination, the ALJ gave "moderate weight" to Dr. Karimova's opinion, which he summarized as imposing "exertional

limitations consistent with medium work, but with the additional limitation of being able to stoop and crouch at most frequently." (*Id.*)

The rest of the ALJ's RFC discussion addressed the nonexamining state agency medical consultants' opinions and Manfre's credibility. (AR 21-22.) Addressing Drs. Kuo and Gelinas, the ALJ afforded their opinions "limited weight" because their "additional limitations in both postural and manipulative activities" "are unsupported by the record, which shows [Manfre] with full grip strength and range of motion, in Sept. 2011, with no significant subsequent treatment for hand and wrist problems." (*Id.*) Similarly, the ALJ afforded "little weight" to the opinions of Drs. Sandrik and Chiang because their opinions gave "insufficient consideration to [Manfre's] own reports . . . of the activities she performs by herself" and were contradicted by Manfre's "cogent and responsive" behavior at the hearing. (AR 22.) Lastly, the ALJ found Manfre "to be at most partially credible." (AR 22.) He cited items in the record that provided "evidence of significant retained ability to read and write," noted that Manfre's alleged disability began at the start of cosmetology school rather than with a medical event, and noted that Manfre testified at the hearing that "she worked cutting hair for four months in 2012." (*Id.*)

At phase two of step four, the ALJ determined that Manfre had no past relevant work. (*Id.*) Finally, at step five, the ALJ concluded that Manfre was not disabled under the Medical-Vocational Guidelines. (AR 23.) The Appeals Council declined to review the case, rendering the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Manfre claims the ALJ committed legal error in both his RFC and step five findings. At the RFC stage, Manfre contends that the ALJ failed to include her cognitive and wrist impairment limitations, failed to fully discuss Dr. Arcuri's opinion, and improperly diminished

her credibility. At step five, Manfre alleges that the ALJ failed to include all nonexertional limitations when using the medical-vocational guidelines, which rendered the subsequent finding error. The Commissioner responds that the ALJ adequately explained why the cognitive and wrist impairments were not severe, that the omission of Dr. Arcuri's opinion was "ultimately immaterial to the outcome of the case" (Doc. 19 at 8) because it was a step two error and Manfre failed to show that it prejudiced her, that the ALJ properly assessed Manfre's credibility, and that the ALJ correctly applied the medical-vocational guidelines at step five.

## I.     Borderline Intellectual Functioning

Manfre argues that the ALJ's conclusion that her borderline intellectual functioning was non-severe was "contrary to the substantial evidence of record, and is contrary to law." (Doc. 16 at 19.) Addressing substantial evidence, Manfre argues that "Dr. Arcuri's assessment, Dr. Chiang's findings, and Ms. Manfre's testimony and report forms offer ample evidence to clear the severity hurdle." (*Id.*) Addressing law, Manfre argues that the ALJ addressed the test scores but "failed to mention or discuss Dr. Arcuri's other findings of specific limitation." (*Id.*)

I find Manfre's arguments unpersuasive. The counterevidence she offers to rebut the ALJ's conclusion that her cognitive limitations were non-severe is not overwhelming. *See Hamlin*, 365 F.3d at 1224 (reversing because the RFC was "contrary to the overwhelming medical evidence in the record."). Moreover, the ALJ's discussion of Dr. Arcuri's opinion—though brief—constitutes more than a scintilla of evidence. *See id.* at 1214. In sum, short of re-weighing the evidence, I cannot say that the ALJ erred.

Likewise, Manfre's assertion that the ALJ committed an error of law by failing to discuss Drs. Arcuri and Chiang's workplace limitations also fails. The ALJ must assess all relevant evidence when determining the RFC, 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling

8

("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996),[3] "but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, Manfre's argument alleging that the ALJ improperly evaluated Dr. Arcuri's opinion is hampered by the ALJ's finding of "mild limitation" in concentration, persistence, or pace. (AR 20.) This finding demonstrates that the ALJ assessed Dr. Arcuri's opinion and recognized that Manfre had some degree of limitation. Had the ALJ found "no limitation," Manfre's argument that the ALJ failed to assess the evidence would be bolstered, and my decision would probably be different. Likewise, the ALJ's failure to discuss Dr. Chiang's findings about Manfre's limitations in the workplace was permissible given that he justifiably afforded the opinion little weight later in his decision. (*See* AR 22.)

## II.     Wrist Pain

Manfre argues that substantial evidence does not support the ALJ's conclusion that "the evidence does not establish severe wrist problems lasting for twelve months or more." (AR 19.) Manfre cites complaints of wrist pain in a March 2010 visit and November 2011 visit to demonstrate the impairment exceeded the ALJ's twelve month threshold. (Doc. 16 at 20-21.)

What Manfre fails to address, however, is whether the finding was harmless error. When an ALJ makes a step two error, it becomes harmless when the ALJ reaches the proper conclusion that the claimant cannot be denied benefits and proceeds to step three. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). Here, at step two, the ALJ found two impairments, and properly proceeded to step three, so any step two error was harmless.

---

[3] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

Moreover, the ALJ did not fail to consider the non-severe wrist impairment in his RFC. *See Grotendorst v. Astrue*, 370 F. App'x 879, 884 (10th Cir. 2010) (unpublished) (finding reversible error where the ALJ gave claimant's non-severe impairments "no further consideration" after step two). Rather, in the credibility section, the ALJ noted that Manfre "admitted at the hearing that she worked cutting hair for four months in 2012" (AR 22), which he used to question "the severe and disabling limitations [Manfre] alleges." (AR 22.) Under these circumstances, i.e., proceeding to step three and considering the non-severe impairment in the RFC, the ALJ's step two error, if it exists, was harmless.

### III. Weighing of Medical Evidence

Manfre argues that the ALJ committed a number of errors of law when weighing the medical evidence. First, she argues that the ALJ erred because he "failed to discuss Dr. Arcuri's opinion regarding Ms. Manfre's specific functional limitations at all." (Doc. 16 at 22) (emphasis omitted). She cites *Clifton* for the proposition that the ALJ must discuss the probative evidence he rejects. *See* 79 F.3d at 1009-10. In *Clifton*, the ALJ provided only a "summary conclusion that [the claimant's] impairments" did not entitle her to disability benefits, and the court held that "[s]uch a bare conclusion [was] beyond meaningful judicial review." *Id.* at 1009.

Here, unlike *Clifton*, the ALJ provided more than a threadbare conclusion. He noted that Manfre's full scale IQ score underestimated her abilities and included Dr. Arcuri's limitations when finding that Manfre had "mild limitation" in concentration, persistence, or pace. (AR 20.) The "mild limitation" finding shows that the ALJ did not reject Dr. Arcuri's opinion but rather weighed it and incorporated appropriate limitations.

Manfre also argues that the ALJ erred because he "improperly assessed the weight to afford the opinion of . . . Dr. Chiang." (Doc. 16 at 22.) Dr. Chiang is a nonexamining physician

whose opinion the ALJ must evaluate according to the following six factors: (1) the examining relationship between the medical source and the claimant; (2) the treatment relationship between the source and claimant; (3) the supportability of the source's findings; (4) the consistency of the source's opinion "with the record as a whole"; (5) the source's status as a specialist, if applicable; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ need not explicitly discuss each factor for each medical opinion because "not every factor . . . will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted). After properly applying these factors, the ALJ must determine the weight to afford the opinion, but "the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Here, the ALJ addressed factors (1), (2), (4), and (6). Specifically, he noted that Dr. Chiang did not personally examine Manfre, noted that Dr. Chiang did not adequately address the activities Manfre performs without assistance, and noted that Manfre appeared "cogent and responsive to all questions [at the hearing] in a manner inconsistent with severe cognitive limitations." (AR 22.) Given Dr. Chiang's status as a nonexamining source—and the associated low standard of deference—the ALJ's explanation justifies affording the opinion minimal weight.

Manfre next argues that the ALJ failed to bridge the gap between Dr. Chiang's opinion and his more-inclusive RFC, stating "the discrepancy between Dr. Chiang's findings and the RFC finding is error." (Doc. 16 at 24.) This argument is without merit. The ALJ properly relied on Dr. Arcuri's opinion to address the mental component of his RFC. Specifically, in the section addressing Manfre's concentration, persistence, or pace, the ALJ included Dr. Arcuri's statement

that Manfre's cognitive test score underestimated her mental abilities. (AR 20.) Taken together, the ALJ's reasoning—that Manfre's diagnosed mental limitations were "an under-estimate of [her] true abilities" (AR 20), that Dr. Chiang's opinion deserves "little weight" (AR 22), and that Manfre's claimed cognitive deficits were "only partially credible" (*id.*)—demonstrates that he considered the entire case record and made thoughtful determinations based upon all available information. *See Clifton*, 79 F.3d at 1009.

The Commissioner, to avoid the issue entirely, argues that the ALJ's treatment of Dr. Chiang's opinion "is ultimately irrelevant to the outcome of the case" because "Dr. Chiang agreed that Manfre was capable of simple decisions in a routine work setting," "consistent with the definition of unskilled work." (Doc. 19 at 10) (internal quotation marks omitted). Manfre responds that "[t]he ALJ did not limit Ms. Manfre to simple work, or even unskilled work," which "shows that he rejected not only the evidence from Dr. Arcuri, but from [Dr. Chiang] as well. That failure was error." (Doc. 21 at 5.)

As discussed above, the ALJ adequately accounted for Dr. Arcuri's mental limitation findings and properly diminished Dr. Chiang's opinion. Thus, Manfre's remaining arguments—that the ALJ impermissibly afforded Dr. Chiang's opinion no weight, and that the ALJ "improperly substituted his lay opinion for that of [Dr. Chiang]" (Doc. 16 at 23)—also fail.

## IV. Credibility Analysis

Manfre argues that the ALJ erred by using "impermissible boilerplate language" (Doc. 16 at 24) to find her "partially credible" (AR 22). When assessing a claimant's credibility, the ALJ must "consider the entire case record," SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996), cite "specific reasons for the finding . . . supported by the evidence in the case record," *id.* at *2, and adequately link the substantial evidence to the credibility determination, *see Kepler v. Chater*, 68

F.3d 387, 391 (10th Cir. 1995) (noting that credibility determinations cannot be conclusions disguised as facts).

Here, the ALJ provided four reasons to question Manfre's credibility (AR 22). The most compelling reason was that Manfre completed an eight page report form by herself (*see* AR 243-250) after testifying that she needed her mother to read and fill out her Social Security paperwork (*see* AR 35). Tellingly, Manfre's answers on the form were direct and relevant—which demonstrates that she understood the questions—and verbose—which calls into question some of her self-reported mental limitations. (*See, e.g.*, AR 244.) Moreover, the events the ALJ cited spanned Manfre's entire application timeline—the beginning (i.e., the circumstances surrounding the date Manfre filed her applications), the middle (i.e., Manfre's verbose 2010 report and daily attempts to read), and the end (i.e., Manfre's hearing testimony). (*See* AR 22.) In sum, the ALJ's credibility determination was far from conclusory and demonstrated that he considered the entire record.

## CONCLUSION

Because I conclude that the ALJ adequately explained how he arrived at the RFC, I do not find error in his omission of nonexertional limitations in his step five analysis. Therefore, I deny Manfre's motion to reverse and remand, and affirm the decision of the Commissioner.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge